IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID GRIFFIN,

     Petitioner,

  vs.

G. D. LEWIS, Warden, Pelican Bay State
Prison,

     Respondent.

No. 2:11-cv-1358-JKS

MEMORANDUM DECISION

David Griffin, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas

Corpus under 28 U.S.C. § 2254.  Griffin is currently in the custody of the California Department

of Corrections and Rehabilitation, incarcerated at Pelican Bay State Prison.  Respondent has

answered, and Griffin has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

Griffin was convicted by a jury in the Sacramento County Superior Court of one count of

attempted murder (Cal. Penal Code §§ 187(a), 664) and one count of robbery (Cal. Penal Code

§ 211), with a finding that in committing those offenses, a principal was armed with a firearm

(Cal. Penal Code § 12022(a)(1)).[1]  In July 2009 the trial court sentenced Griffin concurrently in

connection with his conviction in another case to a consolidated, aggregate prison term of

nineteen years and eight months.  The California Court of Appeal affirmed Griffin's conviction

---

[1] Griffin was tried in a joint trial with two co-defendants, Anthony Earl Richard and
Raymond Amayo.

and sentence in an unpublished decision,[2] and the California Supreme Court denied leave to

appeal on March 16, 2011.  Griffin timely filed his Petition for relief in this Court on May 4,

2011.

Because the facts underlying Griffin's conviction are not germane to the issues raised in

his Petition, they are not repeated here.

## II.  GROUNDS RAISED/DEFENSES

Griffin raises three grounds:  (1) the trial court violated *Batson-Wheeler*;[3] (2) the trial

court erred in dismissing a seated juror for cause; and (3) the trial court erred in admitting

evidence that Griffin was at the apartment of a co-defendant's girlfriend at the time of a

probation search.  Respondent does not assert any affirmative defenses.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" at the time the state court renders its decision or "was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."[4]  The Supreme Court has explained that "clearly established Federal law" in

---

[2] *People v. Richard*, No. C0600092, 2010 WL 4794942 (Cal. Ct. App. Nov. 24, 2010).

[3] *Batson v. Kentucky*, 476 U.S. 79 (1986) (a shorthand reference to the procedure under which a prosecutor's peremptory strikes of potential jurors are challenged on the basis that the strikes are being made on a discriminatory basis, *i.e.*, because they are members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds); *People v. Wheeler*, 583 P.2d 748 (Cal. 1978) (the California counterpart to *Batson*).

[4] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer*
(continued...)

2

§ 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[5]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[6]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[8]  The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[9]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[10]  In a

---

[4](...continued)
*v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[5] *Williams*, 529 U.S. at 412 (alteration added).

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[10] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

federal habeas proceeding, the standard under which this Court must assess the prejudicial

impact of constitutional error in a state court criminal trial is whether the error had a substantial

and injurious effect or influence in determining the outcome.[11]  Because state court judgments of

conviction and sentence carry a presumption of finality and legality, the petitioner has the burden

of showing by a preponderance of the evidence that he or she merits habeas relief.[12]

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal
> court relitigation of claims already rejected in state proceedings.  *Cf. Felker v.
> Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing
> AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue
> the writ in cases where there is no possibility fairminded jurists could disagree that
> the state court's decision conflicts with this Court's precedents.  It goes no farther.*
> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme
> malfunctions in the state criminal justice systems," not a substitute for ordinary error
> correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct.
> 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition
> for obtaining habeas corpus from a federal court, a state prisoner must show that the
> state court's ruling on the claim being presented in federal court was so lacking in
> justification that there was an error well understood and comprehended in existing
> law beyond any possibility for fairminded disagreement.[13]

In applying this standard, this Court reviews the "last reasoned decision" by the state

court.[14]  State appellate court decisions that summarily affirm a lower court's opinion without

---

[11] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[12] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[13] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[14] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . .

(continued...)

explanation are presumed to have adopted the reasoning of the lower court.[15]  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[16]

## IV.  DISCUSSION

Ground 1:  *Batson-Wheeler* Error

During jury selection, the prosecutor peremptorily excused seven prospective jurors, of which two were Hispanic, one was African-American, and one juror was either Asian or Pacific-Islander.  Griffin contends that in ruling on his *Batson-Wheeler* motion the trial court failed to employ the proper procedure.  Specifically, Griffin's argument is that: (1) the Court of Appeal did not make a *prima facie* showing of group bias, i.e., "people of color"; (2) the trial court improperly provided the race-neutral reasons instead of requiring the prosecutor to provide an explanation of a legitimate reason for excusing the jurors; and (3) the trial court failed to make a neutral determination of the believability of the prosecutor.  The California Court of Appeal held:

> During jury selection, counsel for Griffin, joined by counsel for codefendant Tyler, made a motion pursuant to *People v. Wheeler, supra,* 22 Cal.3d 258, 148 Cal. Rptr. 890, 583 P.2d 748 and *Batson v. Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69], claiming the prosecutor had used peremptory challenges in a discriminatory manner.

---

[14](...continued)
rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . ").

[15] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[16] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

The trial court denied the motion.  On appeal, Griffin contends that the trial court violated his federal due process rights because it failed to follow the mandated procedure for responding to *Wheeler* motions.  The contention is without merit because the trial court acted properly.

A.  *Wheeler/Batson*

 "'A prosecutor's use of peremptory challenges to strike prospective jurors on the basis of group bias—that is, bias against "members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds"—violates the right of a criminal defendant to trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the California Constitution.  [Citations.]  Such a practice also violates the defendant's right to equal protection under the Fourteenth Amendment to the United States Constitution.  [Citations.]'  [Citation .]"  (*People v. Hutchins* (2007) 147 Cal. App.4th 992, 996, 55 Cal. Rptr. 3d 105.)

 "In a recent decision, the United States Supreme Court reaffirmed that *Batson* states the procedure and standard to be employed by trial courts when challenges such as defendant's are made.  'First, the defendant must make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose."  [Citations.]  Second, once the defendant has made out a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" by offering permissible race-neutral justifications for the strikes.  [Citations.]  Third, "[i]f a raceneutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination."  [Citation.]'  [Citation.]"  (*People v. Cornwell* (2005) 37 Cal.4th 50, 66–67, 33 Cal. Rptr.3d 1, 117 P.3d 622, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22, 87 Cal. Rptr. 3d 209, 198 P.3d 11.)

 "The three-step *Batson* analysis, however, is not so mechanical that the trial court must proceed through each discrete step in ritual fashion."  (*People v. Adanandus* (2007) 157 Cal. App.4th 496, 500, 69 Cal. Rptr. 3d 25.)  "[W]here the "'trial court denies a *Wheeler* motion without finding a prima facie case of group bias the reviewing court considers the entire record of voir dire.  [Citations.]  As with other findings of fact, we examine the record for evidence to support the trial court's ruling.  Because *Wheeler* motions call upon trial judges' personal observations, we view their rulings with "considerable deference" on appeal.  [Citations.]  If the record "suggests grounds upon which the prosecutor might reasonably have challenged" the jurors in question, we affirm.'"  [Citation.]"  (*Id.* at p. 501, 148 Cal. Rptr. 890, 583 P.2d 748.)

B . *Proceedings*

 During jury selection, Griffin made a *Wheeler* motion.  He asserted that four of the seven prospective jurors challenged by the prosecutor were "people of color."  Prospective Juror Julyn Hicks was African-American.  Prospective Juror Mikey Metz was either Asian or Pacific Islander.  And Prospective Jurors Miguel Ramirez and Elisa Echeverria were Hispanic.  Griffin's only argument in favor of the *Wheeler* motion was that these prospective jurors, who had been challenged by the prosecutor, were minorities.

The trial court discussed each of the four prospective jurors and made the following observations.

Concerning Prospective Juror Hicks: "Miss Hicks indicated she had some problem with the system. She had some problem with the courts. And that's enough of a basis—non-*Wheeler* basis for her to be excused. [¶] *Wheeler* is denied as to her."

Concerning Prospective Juror Metz: "It's not good *Wheeler*. The witness—I mean the juror stated that she has served on two juries that a decision wasn't reached and that's a non-racial or non-*Wheeler* basis for excusing the juror."

Concerning Prospective Juror Ramirez: "Mr. Ramirez indicated that he has had relatives that have been in trouble in and out of the system. Doesn't deal in other things. [*Sic.*] He had to about a few months ago. That plead guilty. [*Sic.*] District attorney despite him saying he doesn't have a problem with the People, that's a non-*Wheeler* basis for excusing him. [¶] *Wheeler* denied on that."

Concerning Prospective Juror Echeverria: "She says she was a Peace Corp. [*sic*] person. When she was overseas she was robbed, hit in the head. And in fact [counsel for Richard] asked did she have any bad feelings about it. And I said you mean about—about being hit in the head . . . . [¶] . . . And she indicated that she didn't turn it into the law enforcement, she turned it into the Peace Corp [*sic*] and she had no hard feelings growing out of it. That's basically what she said."

The trial court asked the prosecutor to explain her reason for challenging Prospective Juror Echeverria, and the prosecutor replied that she was uncomfortable with the fact that the prospective juror was a victim of a similar crime and that, even though the prospective juror said she had no bad feelings about it, the prosecutor did not believe her. The trial court stated that the prosecutor's reason for challenging Prospective Juror Echeverria was valid.

After the trial court had denied the *Wheeler* motion in its entirety, the prosecutor added: "The Court in its ruling on the Wheelers have [*sic*] mentioned non-race based reasons for dismissing jurors Miss Hicks and Mr. Ramirez. And just so the record is absolutely clear, the reasons indicated by the Court are my own reasons for kicking them as jurors as well."

C. *Analysis*

Griffin argues that the trial court erred by (1) not finding that Griffin had shown a prima facie case of discrimination based on group bias, (2) stating reasons for the challenges rather than requiring the prosecutor to state reasons, (3) stating reasons as if they required disqualification of jurors, and (4) abandoning its duty to make a neutral evaluation of the sincerity of the prosecutor's reasons. Griffin's argument fails from the outset because he did not establish a prima facie case of discrimination based on group bias. It is therefore unnecessary to discuss Griffin's last three arguments because they are based on the assumption that a prima facie case was established.

Concerning a prima facie showing of discrimination based on group bias, Griffin argues: "Because the defense could show that the majority of challenges were to individuals with ethnic backgrounds, the defense made out a prima facie case of

discrimination.  The trial court should have made the [prima facie] finding and asked the prosecutor for reasons [for the challenges.]"  This argument is unconvincing because (1) "individuals with ethnic backgrounds" is not a cognizable group for the purpose of a *Wheeler* motion and (2) the sole basis of Griffin's showing was that the prosecutor used some of her peremptory challenges to excuse an unknown percentage of the jurors from each asserted race or ethnic background.

The Supreme Court has rejected the grouping of minorities, in general, for the purpose of a *Wheeler* motion.  It stated: "At the outset, we reject defendant's contention that the trial court erred by ruling that 'people of color' is not a cognizable group for *Wheeler* analysis.  No California case has ever recognized 'people of color' as a cognizable group."  (*People v. Davis* (2009) 46 Cal.4th 539, 583, 94 Cal. Rptr. 3d 322, 208 P.3d 78.)  Because Griffin fails to present a cognizable group, his contention that the *Wheeler* motion was improperly handled and decided is without merit.

Additionally, no prima facie case of discrimination based on group bias was established on this record.  Therefore, the trial court had no duty to move on to the next step—inquiring concerning the prosecutor's reasons—in a *Wheeler* motion.

The Supreme Court's conclusion in a recent case is also apt here: "[W]e have independently reviewed the record and conclude that defendant failed to 'produc[e] evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.' [Citation.] Defendant's showing in support of his . . . *Wheeler/Batson* motion was meager.  At the hearing, defense counsel relied solely on the fact the prosecutor had exercised three of her 10 peremptory challenges to excuse two African–American prospective jurors and one Hispanic prospective juror.  Such evidence, without more, is insufficient to create an inference of discrimination, especially where, as here, the number of peremptory challenges at issue is so small. [Citation.]" (*People v. Taylor* (2010) 48 Cal.4th 574, 642–643, 108 Cal. Rptr. 3d 87, 229 P.3d 12.)

Griffin's contention that the trial court violated his federal due process rights in the handling and disposition of the *Wheeler* motion is without merit.[17]

*Batson* established a three-step process for adjudicating a claim that a peremptory

challenge was based on race:

[A] defendant [can] make out a prima facie case of discriminatory jury selection by "the totality of the relevant facts" about a prosecutor's conduct during the defendant's own trial.  "Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging . . . jurors within an arguably targeted class."  Although there may be "any number of bases on which a prosecutor [might] believe that it is desirable to strike a juror who is not excusable

---

[17] *Richard*, 2010 WL 4794942 at *8-10.

for cause . . ., the prosecutor must give a clear and reasonably specific explanation of his legitimate reasons for exercising the challeng[e]." "The trial court will have the duty to determine if the defendant has established purposeful discrimination."[18]

Under *Batson*'s first step, a defendant must establish a *prima facie* case of purposeful discrimination. The defendant must show that (1) the prospective juror is a member of a "cognizable racial group," (2) the prosecutor used a peremptory strike to remove the juror, and (3) the totality of the circumstances raises an inference that the strike was on account of race.[19] Griffin argues that a *prima facie* case of purposeful discrimination was made because the record demonstrated a pattern of discrimination against non-whites. Therefore, according to Griffin, the trial court should have asked the prosecutor to provide reasons for challenging the jurors, the second step of the *Batson* test, instead of providing the reasons.

In this proceeding, Griffin has the burden of establishing by a preponderance of the evidence that he is entitled to relief.[20] A petition must specify all the grounds for relief available to the petitioner and the facts supporting each ground.[21] As the Supreme Court has stated:

> Habeas Corpus Rule 2(c) is more demanding [than notice pleading]. It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." See also Advisory Committee's Note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts. [But] it is the relationship of the facts to the claim asserted that is important . . . ."); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real

---

[18] *Miller-El v. Dretke*, 545 U.S. 231, 239 (2005) (quoting *Batson v. Kentucky*, 476 U.S. 79, 94, 96-98 (1986)).

[19] *Batson*, 476 U.S. at 96; *see Johnson v. California*, 545 U.S. 162, 169 (2005).

[20] *Silva*, 279 F.3d at 835; *see Bartholomew*, 516 U.S. at 8 (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[21] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 2(c) (2012).

possibility of constitutional error." (internal quotation marks omitted)).  Accordingly, the model form available to aid prisoners in filing their habeas petitions instructs in boldface:

> "**CAUTION**:  **You must include in this petition <u>all</u> the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground.  If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**"  Petition for Relief From a Conviction or Sentence By a Person in State Custody, Habeas Corpus Rules, Forms App., 28 U.S.C., P. 685 (2000 ed., Supp. V) (emphasis in original).
>
> A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to "show cause why the writ should not be granted."  § 2243.  Under Habeas Corpus Rule 4, if "it plainly appears from the petition . . . that the petitioner is not entitled to relief in the district court," the court must summarily dismiss the petition without ordering a responsive pleading.  If the court orders the State to file an answer, that pleading must "address the allegations in the petition." Rule 5(b).[22]

The problem in this case is that the facts alleged by Griffin, even as augmented in his Traverse, are sparse and do not support a *prima facie* case under *Batson*.  Initially, this Court notes that, as has the California Supreme Court, the Ninth Circuit has declined to recognize all "non-whites" as a separate cognizable group.[23]  In addition to African-Americans, Hispanics and Pacific-Islanders are each themselves "cognizable groups."[24]  In this case, 42.8 percent of the challenged jurors were white, 28.6 percent were Hispanic, and African-American and Pacific-Islander each constituted 14.3 percent.

Griffin fails to satisfy the third element of a *prima facie* case, that the totality of the circumstances create an inference of discriminatory intent.  As he did before the California Court

---

[22] *Mayle v. Felix*, 545 U.S. 644, 655-56 (2005).

[23] *United States v. Suttiswad*, 696 F.2d 645, 649 (9th Cir. 1982).

[24] *See, e.g., Serena v. Mock*, 547 F.3d 1051 (9th Cir. 2008) (Hispanic); *United States v. Guerrero*, 595 F.3d 1059 (9th Cir. 2010) (Pacific-Islander).

of Appeal, Griffin does nothing more than point to the number of non-whites stricken.  This, standing alone, is insufficient to establish a pattern of a discriminatory intent.[25]  Griffin has failed to allege, and the record does not show, how many of each cognizable group sat on the jury, how many were in the venire, or how large the venire was.[26]  Significantly, there is no allegation or evidence that the prosecutor used peremptory challenges to eliminate all the non-white jurors.[27]  Because consideration of all the relevant circumstances does not raise an inference that the prosecutor excluded potential jurors on a constitutionally prohibited basis, the decision of the state court was not contrary to, or an unreasonable application of Supreme Court precedent.[28]  Griffin is not entitled to relief under his first ground.[29]

---

[25] *Williams v. Woodford*, 384 F.3d 567, 584 (9th Cir. 2004).

[26] *Id.; cf. Fernandez v. Roe,* 286 F.3d 1073, 1078-80 (9th Cir. 2002) (stating that a *prima facie* case existed when the record showed that four out of seven (57 percent) prospective Hispanic jurors were stricken); *Turner v. Marshall,* 63 F.3d 807, 813-14 (9th Cir. 1995) (concluding that petitioner had established a *prima facie* case when the record showed that 56 percent of peremptories were used against African-Americans and yet African-Americans comprised approximately 30 percent of the persons who appeared before the court on voir dire), *overruled on other grounds by Tolbert v. Page,* 182 F.3d 677, 685 (9th Cir.1999) (en banc)).

[27] *Turner*, 63 F.3d at 813 (citing *Montiel v. City of Los Angeles*, 2 F.3d 335, 440 (9th Cir. 1993); *United States v. Chinchilla*, 874 F.2d 695, 698 n.4 (9th Cir. 1989)).

[28] 28 U.S.C. § 2254(d)(1).

[29] In reaching this conclusion, this Court is mindful of the fact that, under the Sixth Amendment, a criminal defendant is entitled to the right to a jury drawn from a fair cross-section of the community.  Because the test used in determining a fair cross-section is substantially the same as that required in the issue raised in this case, *see Berghuis v. Smith*, 130 S. Ct. 1382, 1387-89 (2010), Griffin cannot show that the jury in this case fails the fair cross-section test.

Ground 2:  Dismissal of Juror

The trial court, over the objections of Griffin, dismissed a juror and replaced him with an alternate during trial.  Griffin contends that the dismissal of the juror was not authorized under the California Penal Code and, therefore, his rights under the Fifth and Fourteenth Amendments were violated. The California Court of Appeal rejected Griffin's contentions:

> During trial, it came to the court's attention that a juror had been making comments in the hall outside the courtroom about the trial proceedings and a witness. The court investigated and determined that the comments were made, in violation of the court's admonition not to discuss the case and not to form opinions before deliberations.  Based on its determination, the court discharged the juror and replaced him with an alternate. Both defendants assert that discharging the juror violated their Sixth Amendment and Fourteenth Amendment rights because it was without good cause.  To the contrary, good cause supported the discharge.
>
> A.  *Law Concerning Juror Discharge*
>
> A defendant has a constitutional right to a unanimous verdict by a fair and impartial jury.  (Cal. Const., art. I, § 16; U.S. Const., 6th & 14th Amends.; see also *People v. Wheeler* (1978) 22 Cal.3d 258, 265, 148 Cal. Rptr. 890, 583 P.2d 748.) Consistent with this constitutional right, a trial court may discharge a sworn-in juror under some circumstances.  Section 1089 provides in relevant part:  "If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, . . . the court may order the juror to be discharged and draw the name of an alternate, who shall then take a place in the jury box, and be subject to the same rules and regulations as though the alternate juror had been selected as one of the original jurors."
>
> "Removing a juror is, of course, a serious matter, implicating the constitutional protections defendant invokes.  While a trial court has broad discretion to remove a juror for cause, it should exercise that discretion with great care." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052, 63 Cal. Rptr. 3d 82, 162 P.3d 596, fn. omitted.)  "When a court is informed of allegations which, if proven true, would constitute good cause for a juror's removal, a hearing is *required.* [Citations.]" (*Id.* at p. 1051, 63 Cal. Rptr. 3d 82, 162 P.3d 596, original italics.)  "A trial court facilitates review when it expressly sets out its analysis of the evidence, why it reposed greater weight on some part of it and less on another, and the basis of its ultimate conclusion that a juror was failing to follow the oath."  (*Id.* at p. 1053, 63 Cal.Rptr.3d 82, 162 P.3d 596.)
>
> On review, we must ensure that the grounds for a juror's disqualification "appear on the record as a "'"'demonstrable reality.'"'" [Citations.] . . . This standard 'indicates that a stronger evidentiary showing than mere substantial

evidence is required to support a trial court's decision to discharge a sitting juror.' [Citation.]" (*People v. Barnwell, supra,* 41 Cal.4th at p. 1052, 63 Cal. Rptr. 3d 82, 162 P.3d 596.) "Under the demonstrable reality standard, . . . the reviewing court must be confident that the trial court's conclusion is manifestly supported by evidence on which the court actually relied." (*Id.* at p. 1053, 63 Cal. Rptr. 3d 82, 162 P.3d 596.)

B. *Events Supporting Juror Discharge*

The victim, Raymond Amayao, testified during the latter part of the first day of testimony at trial and during the first part of the second day. In response to many of the questions posed to him, Amayao testified that he could not remember. During the afternoon session of the second day of testimony, a spectator informed the court that she had heard a juror talking about the case in the hallway. Under oath, the spectator stated that a male juror, later identified as Juror No. 11, said something like "second day, second witness and all they can say is I don't remember. I didn't remember. I don't remember." The juror said "[s]omething about it being a waste of time or expressing frustration with that kind of testimony." The spectator also informed the court that a female juror sitting across the hallway from Juror No. 11 said, "I'm glad I'm not the only one that feels that way." Several other jurors laughed.

The court questioned Juror No. 11 outside the presence of the rest of the jury, and he admitted making the statements. He claimed they were made in a "joking manner." The court reminded Juror No. 11 that it had repeatedly admonished the jury not to discuss the case or form opinions until jury deliberations after all the evidence was heard. The juror responded that he would follow the admonition.

The court then had the rest of the jury enter the courtroom. It reminded the jurors that they could not form an opinion about the case until it was given to them to decide and that they were not to discuss the case except in the jury room during deliberations. The jurors responded collectively that they could follow the admonition.

The court excused the jury and discussed the situation with counsel. The prosecutor expressed concerns about Juror No. 11's ability to be fair and not to prejudge the case. The three defense attorneys believed Juror No. 11 could be fair, and they blamed Amayao's purported lack of memory and the long waits in the hallway for the frustration that Juror No. 11 voiced. Counsel for codefendant Tyler suggested that, if the court was considering discharging Juror No. 11, more investigation was needed. The court offered to have the bailiff find out who Juror No. 11 was talking to and question her, but counsel backed away from his suggestion of further investigation.

After the matter was submitted, the court stated: "I specifically find juror misconduct. Tell him he is excused. Select another juror."

C. *Analysis*

The California Supreme Court has affirmed trial court findings of good cause to discharge jurors under section 1089 in a variety of contexts. For example, the court has "upheld a trial court's decision to discharge a juror for 'good cause' when

continued jury service would force the cancellation of a juror's scheduled vacation (*People v. Lucas* [(1995) 12 Cal.4th 415,] 488–489, 48 Cal. Rptr. 2d 525, 907 P.2d 373), would be a financial hardship on the juror (see *People v. Mickey* (1991) 54 Cal.3d 612, 665, 286 Cal. Rptr. 801, 818 P.2d 84), or when a juror who anticipated starting a new job needed additional time to complete certain paperwork related to her old position (*People v. Fudge* (1994) 7 Cal.4th 1075, 1098–1099, 31 Cal. Rptr. 2d 321, 875 P.2d 36)." (*People v. Earp* (1999) 20 Cal.4th 826, 892–893, 85 Cal. Rptr.2d 857, 978 P.2d 15 [affirming finding of good cause where juror's employer stopped paying for jury service and continuing service would be financial hardship].) In cases more similar to this case, the Supreme Court has also affirmed convictions when a juror was discharged because she was so emotionally involved in the case that she felt she could not follow the court's instructions concerning deliberation (*People v. Collins* (1976) 17 Cal.3d 687, 690, 131 Cal. Rptr. 782, 552 P.2d 742, limited on another ground in *People v. Fields* (1983) 35 Cal.3d 329, 351, fn. 9, 197 Cal. Rptr. 803, 673 P.2d 680) and another juror was discharged because he read a newspaper article about the trial and commented to nonjurors that he did not see how the defendant could have committed the crime (*People v. Daniels* (1991) 52 Cal.3d 815, 863–866, 277 Cal. Rptr. 122, 802 P.2d 906). In the latter case, the Supreme Court stated that "a judge may reasonably conclude that a juror who has violated instructions to refrain from discussing the case or reading newspaper accounts of the trial cannot be counted on to follow instructions in the future." (*Id.* at p. 865, 277 Cal.Rptr. 122, 802 P.2d 906.)

Although the trial court may have better stated its reasons for discharging Juror No. 11 (see *People v. Barnwell, supra,* 41 Cal.4th at p. 1053, 63 Cal. Rptr. 3d 82, 162 P.3d 596), there can be no doubt that Juror No. 11 was discharged because he violated the court's admonition not to discuss the case or form an opinion before jury deliberations and because of the accompanying inference that he would continue to violate the oath.

Juror No. 11 committed a serious violation of the court's admonition not to discuss the case or form opinions until deliberations. (See § 1122, subd. (b).) His claim that he could and would follow the court's instructions thereafter was not convincing in light of his failure to do so very early in the trial and his apparent belief that it was a joking matter. This establishes a demonstrable reality that he was unable to function properly as a juror. The trial court did not abuse its discretion in discharging Juror No. 11.

Richard relies heavily on *People v. Wilson* (2008) 44 Cal.4th 758, 80 Cal. Rptr. 3d 211, 187 P.3d 1041 (*Wilson* ) for his argument that the trial court here abused its discretion in discharging Juror No. 11 for what Richard contends were trivial matters. His reliance on *Wilson* is misplaced. That case involved several factors not present in this case, primarily the juror's status as the lone holdout for a life sentence on a jury deliberating on the death penalty, that made discharge of the juror in that case a violation of the defendant's Sixth and Fourteenth Amendment rights.

14

In *Wilson,* the trial court dismissed the lone African–American juror during the death-penalty-phase jury deliberations of a case against an African–American defendant. The juror was the lone holdout for a life sentence. He had initially voted for death but changed his vote based on his own experience with circumstances similar to the defendant's negative family dynamics. (*Wilson, supra,* 44 Cal.4th at pp. 813–814, 80 Cal. Rptr. 3d 211, 187 P.3d 1041.) The trial court cited four reasons for dismissing the juror: (1) he concealed racial bias during voir dire, (2) he relied on facts outside the evidence, (3) contrary to the court's instruction he considered life without parole as worse than death, and (4) he prejudged the appropriate penalty, as shown by a comment to another juror during the guilt phase. (*Id.* at pp. 816–820, 80 Cal.Rptr.3d 211, 187 P.3d 1041.) The Supreme Court addressed each of the reasons given by the trial court and found that "none of [the] grounds [was] established to a demonstrable reality." (*Id.* at p. 841, 80 Cal. Rptr. 3d 211, 187 P.3d 1041.) Richard focuses on the last of the reasons given in *Wilson* for the juror dismissal—prejudging the appropriate penalty. We do the same.

The juror in *Wilson* made a comment at a break during the guilt phase of the trial, wondering out loud whether a person can be held responsible when that person has no authority figure. (*Wilson, supra,* 44 Cal. Rptr.3d 211, 187 P.3d 1041.) In addressing this ground for discharge, the Supreme Court initially discussed whether the comment was a violation of the admonition not to discuss the case, even though violation of the admonition was not the ground upon which the trial court relied in discharging the juror. The court noted that trivial violations of the admonition do not require removal of the offending juror. (*Id.* at p. 839, 80 Cal. Rptr. 3d 211, 187 P.3d 1041.) The court stated that the juror's "solitary and fleeting comments to a fellow juror, made during a break early in the guilt phase portion of the trial, were a technical violation of both section 1122 and the court's admonition to the jury not to discuss the case. But the violation was a trivial one: one, possibly two sentences, spoken in rhetorical fashion and not in an obvious attempt to persuade anyone. [The juror to whom the comment was made] averred that he did not respond, and none of the other jurors reported hearing the comments." (*Id.* at pp. 839–840, 80 Cal. Rptr. 3d 211, 187 P.3d 1041.) The Supreme Court then moved on to the reason given by the court for discharging the juror—prejudging the penalty—and held that the comment made by the juror did not establish a demonstrable reality that the juror prejudged the question of penalty. (*Id.* at pp. 840–841, 80 Cal. Rptr. 3d 211, 187 P.3d 1041.)

This case is different from *Wilson* in several key ways. First, the removal of the juror in *Wilson* occurred during penalty-phase deliberations, well after the offending statement was made during the guilt phase. Here, Juror No. 11 was removed as a prophylactic to further violations, soon after violating the court's admonition. Second, in *Wilson,* the statement was used as evidence that the juror had prejudged the question of penalty, concerning which the Supreme Court found no demonstrable reality of prejudgment. Here, Juror No. 11 was dismissed because he had exhibited an inability to follow the admonitions of the court and seemed to think it was a joking matter. Third, the juror in *Wilson* was the lone holdout for a life

sentence, well into penalty-phase deliberations.  Here, there were no deliberations and no indication of how Juror No. 11 would have voted had he heard all the evidence.

In the context of this case, Juror No. 11's statements were not fleeting and solitary.  This was one of his first opportunities to violate the court's admonition, and he took the opportunity, thus supporting the inference that he would continue to take the court's instructions lightly.  His dismissal did not violate the constitutional jury trial rights of Richard and Griffin.

Richard further argues that we must reverse because the trial court did not hold a hearing adequate to determine whether Juror No. 11 was fit to serve.  In support of this argument, he claims that, because Juror No. 11 told the court that he would follow the court's admonitions, there was insufficient evidence to conclude that he would not follow the admonitions.

Richard states:  "[Juror No. 11's] answers to the court's extremely limited questions were appropriate, respectful, and indicative of an intent to follow the court's orders scrupulously."  To the contrary, Juror No. 11 had already taken an oath to follow the court's orders and had violated it.  If he intended to be scrupulously obedient, he would not have violated the admonitions in the first place.  The court's investigation was adequate.[30]

Griffin's entire position is predicated upon the argument that the dismissal of the juror was contrary to the "good cause" requirement of California law.  As an issue of the proper application of state law, it is beyond the purview of this Court in a federal habeas proceeding.[31]  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[32]  A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[33]  This is

---

[30] *Richard*, 2010 WL 4794942 at *2-6.

[31] *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).

[32] *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[33] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

especially true where the highest court in the state has denied review of the lower court's decision.[34]

A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[35]  "[The Supreme Court has] long recognized that a mere error of state law is not a denial of due process."[36]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[37]  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[38]  In this case, the trial court did not dismiss the juror for a constitutionally prohibited reason, i.e., a reason that would violate the Sixth Amendment.[39]

---

[34] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[35] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[36] *Cooke*, 131 S. Ct. at 863 (internal quotation marks and citations omitted).

[37] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[38] *Smith v. Philips*, 455 U.S. 209, 221 (1982) (citations omitted); *see also Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) ("It is beyond dispute that we do not hold a supervisory power over the courts of the several States." (quoting *Dickerson v. United States*, 530 U.S. 428, 438 (2000))).

[39] The Court notes that Fed. R. Crim. P. 24(c) similarly permits a trial court to dismiss a juror for cause, and whether cause exists is normally within the discretion of the trial court. *United States v. Alexander*, 48 F.3d 1477, 1485 (9th Cir. 1995).  This is, however, a procedural rule the Supreme Court adopted using its supervisory authority over the federal courts, not a constitutionally mandated rule applicable to the states.  *See Anderson v. Terhune*, 409 F.App'x 175, 177-78 (9th Cir. 2011) (unpublished).

Because he has failed to raise a question of constitutional dimension, Griffin is not entitled to

relief under his second ground.

Ground 3:  Evidentiary Ruling

Griffin was present in the apartment of Latisha Halloway, the girlfriend of co-defendant

Richard, at the time when a probation search was conducted that discovered the gun used in the

shooting.  The trial court, over Griffin's objection, allowed this fact to be introduced into

evidence.  Griffin contends the prejudicial effect of this evidence outweighed its probative value,

rendering his trial fundamentally unfair in violation of his due process rights.  The California

Court of Appeal rejected Griffin's contention:

> *Admission of Evidence (Griffin)*
> Before trial, Griffin moved in limine to exclude evidence that he was present
> in the apartment of Richard's girlfriend when officers conducted a search related to
> Richard's probation.  The court found the evidence relevant and overruled Griffin's
> objection based on Evidence Code section 352.  Griffin asserts the trial court abused
> its discretion and violated his federal due process rights because the evidence was
> irrelevant and, in any event, the prejudicial effect of the evidence substantially
> outweighed the probative value.  We disagree.
> A.    *Evidence Code section 352 and Due Process*
> Evidence Code section 352 states:  "The court in its discretion may exclude
> evidence if its probative value is substantially outweighed by the probability that its
> admission will (a) necessitate undue consumption of time or (b) create substantial
> danger of undue prejudice, of confusing the issues, or of misleading the jury."
> "'[A]n appellate court applies the abuse of discretion standard of review to
> any ruling by a trial court on the admissibility of evidence, including one that turns
> on the relative probativeness and prejudice of the evidence in question [citations].
> Evidence is substantially more prejudicial than probative (see Evid. Code, § 352) if,
> broadly stated, it poses an intolerable "risk to the fairness of the proceedings or the
> reliability of the outcome" [citation].'  [Citation.]"  (*People v. Jablonski* (2006) 37
> Cal.4th 774, 805, 38 Cal. Rptr. 3d 98, 126 P.3d 938.)
> "Undue prejudice" as used in Evidence Code section 352 has a distinct
> meaning.  It refers to evidence " 'that uniquely tends to evoke an emotional bias
> against a party as an individual, while having only slight probative value with regard
> to the issues.'"  (*People v. Samuels* (2005) 36 Cal.4th 96, 124, 30 Cal. Rptr. 3d 105,
> 113 P.3d 1125, quoting *People v. Crittenden* (1994) 9 Cal.4th 83, 134, 36
> Cal.Rptr.2d 474, 885 P.2d 887.)  It is not synonymous with evidence that is merely

damaging to the defendant.  (*People v. Bolin* (1998) 18 Cal.4th 297, 320, 75 Cal. Rptr. 2d 412, 956 P.2d 374.)

"[T]he admission of evidence, even if erroneous under state law, results in a due process violation only if it makes the trial *fundamentally unfair*.  [Citations.]" (*People v. Partida* (2005) 37 Cal.4th 428, 439, 35 Cal. Rptr. 3d 644, 122 P.3d 765, original italics.)

B.  *Evidence Presented at Motion in Limine*

Griffin moved in limine to exclude evidence that he was present when a probation search was conducted in the apartment of Richard's girlfriend.  During the search, Griffin gave a false name to the officers.  A gun was found in a dresser drawer in the bedroom.  Griffin argued that he and Richard are half brothers, and Griffin could have had many reasons, unrelated to joint guilt with Richard, to be in the apartment.  The trial court ruled, pursuant to Evidence Code section 352, that the probative value of the evidence outweighed its prejudicial effect.

At trial, Richard's girlfriend testified that the gun was not in the drawer when she left the apartment, which supported an inference that Griffin, who was in the apartment after Richard's girlfriend left, put the gun in the drawer.  The parties agree that this testimony was not presented in support of the motion in limine.

C.  *Analysis*

Griffin first argues that the evidence of his presence at the apartment should have been excluded because it was irrelevant.  To the contrary, the evidence was relevant.  "'Only relevant evidence is admissible (Evid.Code, §§ 210, 350), and all relevant evidence is admissible unless excluded under the federal or state Constitutions or by statute. (Evid.Code, § 351; see also Cal. Const., art. I, § 28, [former] subd. (d) [current subd. (f)(2) ]; [citation].)  The test of relevance is whether the evidence "tends 'logically, naturally, and by reasonable inference' to establish material facts such as identity, intent, or motive." [Citation.]  The trial court has broad discretion in determining the relevance of evidence, but lacks discretion to admit irrelevant evidence.  [Citation.]  We review for abuse of discretion a trial court's rulings on the admissibility of evidence.  [Citations.]' [Citation.]" (*People v. Cowan* (2010) 50 Cal.4th 401, 482, 113 Cal. Rptr. 3d 850, 236 P.3d 1074.)

Griffin argues that the probation search evidence was not relevant to him because there was no evidence that he regularly stayed there and it was logical that he was there because Richard is Griffin's half brother. Also, Griffin had no connection to the room where the gun was found.

This argument goes to the weight of the evidence, not its relevance.  Griffin's presence in the apartment connected him to Richard and to the gun.  These circumstances rendered the evidence relevant.

Griffin next argues that admission of the probation search evidence was prejudicial because it allowed Richard's girlfriend to testify later at trial that the gun was not in the drawer when she left and that Griffin was in the apartment after she left.  This supported an inference that Griffin put the gun in the drawer.

This evidence did not uniquely tend to evoke an emotional bias against Griffin.  (*People v. Samuels, supra,* 36 Cal.4th at p. 124, 30 Cal. Rptr. 3d 105, 113

P.3d 1125.)  Therefore, admission of the evidence was not an abuse of discretion pursuant to Evidence Code section 352.

Furthermore, the admission of the evidence did not render Griffin's trial fundamentally unfair.  Therefore, he also has not established a violation of his due process rights.  (*People v. Partida, supra,* 37 Cal.4th at p. 439, 35 Cal. Rptr. 3d 644, 122 P.3d 765.)[40]

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."[41]  "The introduction of unfairly prejudicial evidence against a defendant in a criminal trial . . . does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice."[42]  "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."[43]  In criminal actions, "[t]he States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in the Federal Constitution."[44]  The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence.[45]  In this context, the Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly, limiting them to specific guarantees

---

[40] *Richard*, 2010 WL 4794942 at *10-12 (footnote omitted).

[41] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

[42] *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir. 1998).

[43] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)).

[44] *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967).

[45] *McGuire*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

enumerated in the bill of rights.[46]  For example, the Supreme Court has barred the introduction of

evidence in state-court criminal proceedings that violated the Fourth Amendment (search and

seizure),[47] Fifth Amendment (confessions),[48] Sixth Amendment (Confrontation Clause),[49] and

(right to counsel).[50]

On the other hand, in deciding cases involving the Federal Rules of Evidence or federal

evidentiary statutes, the Supreme Court is acting in its supervisory capacity over the lower

federal courts.[51]  "'Federal courts hold no supervisory authority over state judicial proceedings

and may intervene only to correct wrongs of constitutional dimension.'"[52]

Federal Rule of Evidence 403, the federal counterpart to California Evidence Code § 352,

permits the exclusion of evidence if its probative value is "outweighed by the danger of unfair

prejudice, confusion of the issues, or misleading the jury."  "A district court is accorded a wide

discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the

probative value of [the proffered evidence], and weighing any factors counseling against

admissibility is a matter first for the district court's sound judgment under Rules 401 and

---

[46] *McGuire*, 502 U.S. at 73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

[47] *Mapp v. Ohio*, 367 U.S. 643 (1961).

[48] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[49] *Crawford v. Washington*, 541 U.S. 36 (2004); *Pointer v. Texas*, 380 U.S. 400 (1965) (transcript of preliminary hearing without assistance of counsel to confront and cross-examine absent witness inadmissible).

[50] *Burgett*, 389 U.S. at 114-15 (evidence of prior conviction obtained in violation of Sixth Amendment right to counsel inadmissible).

[51] *See Sanchez-Llamas*, 548 U.S. at 345.

[52] *Id.* (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)).

403 . . . ."[53]  California employs a similar rule.[54]  Although the Ninth Circuit has suggested that

an abuse of discretion may also amount to a constitutional violation,[55] the Supreme Court has

never held that abuse of discretion is an appropriate basis for granting federal habeas relief.

Indeed, quite to the contrary, the Supreme Court has strongly suggested that, while abuse of

discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.[56]

Here, as the California Court of Appeal correctly noted, the arguments advanced by

Griffin go to the weight of the evidence, not its admissibility.  Having failed to raise a question of

constitutional dimension, Griffin is not entitled to relief under his third ground.

---

[53] *United States v. Abel,* 469 U.S. 45, 54 (1984); *see Boyd v. City and County of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009).

[54] *See People v. Harris*, 118 P.3d 545, 565 (Cal. 2005) ("We review for abuse of discretion a trial court's rulings on the admissibility of evidence.").

[55] *See Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc).

[56] *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law. § 2254(d)(1)").

## V.  CONCLUSION AND ORDER

Griffin is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[57]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[58]

The Clerk of the Court is to enter judgment accordingly.

Dated: October 10, 2012.

_/s/ James K. Singleton, Jr._
JAMES K. SINGLETON, JR.
United States District Judge

---

[57] 28 U.S.C. § 2253(c); _Banks v. Dretke,_ 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting _Miller-El_, 537 U.S. at 327)).

[58] _See_ Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.